750 So.2d 103 (1999)
Joseph PETITO and Terry Stubbs, Appellants,
v.
A.H. ROBINS COMPANY, INC., a Delaware corporation, Zenith Goldline Pharmaceutical, Inc., a Florida corporation, Appellees.
No. 98-3274.
District Court of Appeal of Florida, Third District.
December 22, 1999.
Rehearing Denied February 16, 2000.
*104 Robles & Gonzalez and Ervin Gonzalez and Raymond W. Valori, Miami; Leeds & Colby, Miami; L. Dianne Mason, Coral Gables, for appellants.
Cooney, Mattson, Lance, Blackburn, Richards & O'Connor; Arnold & Porter and Steven P. Lockman and Ellen Steury and Bruce M. Chadwick, Washington, DC; Sterns Weaver Miller Weissler Alhadeff & Sitterson and Martin B. Woods, Ft. Lauderdale; Lester, Schwab, Katz & Dwyer and Frederick H. Fern, Millburn, NJ, for appellees.
Before SCHWARTZ, C.J., and NESBITT, and SORONDO, JJ.
NESBITT, J.
The instant case presents an issue which several other courts have recently confronted, but which no Florida court has directly addressed: whether or not Florida recognizes a cause of action for medical monitoring when the party seeking relief has yet to develop any identifiable physical injuries or symptoms. For the reasoning set forth below, we answer this question in the affirmative and reverse the trial court's Order Granting Final Judgment on the Pleadings.
The Plaintiffs filed a state-wide class action in equity against Defendants, manufacturers and sellers of Fenfluramine and Phentermine (Fen-Phen), much publicized pharmaceutical weight loss products. Although Plaintiffs currently have no physical injuries as a result of using these medicines, they claim that ingesting the combinations of these two drugs has placed them at a substantially increased risk of developing serious cardiac and circulatory ailments, including heart valve damage. As a result, Plaintiffs sought an *105 injunction requiring Defendants to fund a court supervised medical monitoring program which provides for medical testing, monitoring, and study of Plaintiffs and those similarly situated for conditions caused by their use of Fen-Phen. Plaintiffs contend that this monitoring is medically reasonable and necessary, and will allow Fen-Phen users to avoid or minimize damage. The Defendants filed a Motion for Judgment on the Pleadings, arguing that Florida does not recognize a pre-injury claim for future expenses of medical diagnosis. The trial court granted the motion and Plaintiffs appeal. Since we hold that, under certain prescribed circumstances, Florida does recognize a cause of action for future expenses for medical diagnosis, the order of the trial court is reversed.
One of the Defendants' chief contentions is that no cause of action can lie for medical monitoring because plaintiffs in such cases have yet to suffer any injury. Although it is true that plaintiffs in cases such as these have yet to suffer physical injuries, it is not accurate to say that no injury has arisen at all. Perhaps the best illustration of how an injury can arise without a physical injury, for medical monitoring purposes, is a hypothetical posed by the United States Court of Appeal for the District of Columbia in Friends for All Children, Inc. v. Lockheed Aircraft Corp.:
Jones is knocked down by a motorbike which Smith is riding through a red light. Jones lands on his head with some force. Understandably shaken, Jones enters a hospital where doctors recommend that he undergo a battery of tests to determine whether he has suffered any internal head injuries. The tests prove negative, but Jones sues Smith solely for what turns out to be the substantial cost of the diagnostic examinations.
746 F.2d 816, 825 (D.C.Cir.1984).
It is clear that in this example, Jones should be able to recover the cost of the various diagnostic treatments caused by Smith's negligence. It is less clear whether or not Jones should be able to recover for future medical expenses that have yet to arise. Although we do not think that plaintiffs should be able to recover lump sum damages in anticipation of future diagnostic expenses, we do think it entirely proper for a court of equity to create and supervise a fund for the purpose of monitoring the condition of plaintiffs when it has been shown that such monitoring is reasonably necessary. As the Friends for All Children court points out, injury is "`the invasion of any legally protected interest of another.'" See Id. at 826 (quoting RESTATEMENT (SECOND) OF TORTS § 7). One can hardly dispute that an individual has just as great an interest in avoiding expensive diagnostic examinations as in avoiding physical injury. See Id. Although one might suggest that plaintiffs should wait until after the expenses of monitoring have been incurred before a cognizable claim arises, such a holding would foreclose countless economically disadvantaged individuals from obtaining the supervision that they need, and, regardless of financial need, simply force the victims, rather than the wrongdoers, to initially bear these great expenses. Such a result is untenable in a court of equity.
In support of their position that no cause of action exists for medical monitoring absent a physical injury, Defendants cite to this court's decision in Eagle-Picher Indus., Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985). In Eagle-Picher, we held that a plaintiff cannot recover for the enhanced risk that they will contract a disease. Id. at 520. Our holding today is in no way inconsistent with Eagle-Picher, as a claim for medical monitoring is wholly distinguishable from a claim for enhanced risk of disease. See Redland Soccer Club, Inc. v. Dep't. of the Army, 548 Pa. 178, 696 A.2d 137 (1997). As the court in Redland stated:
[A]n action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary *106 to detect the onset of physical harm, whereas an enhanced risk claim seeks compensation for the anticipated harm itself, proportionately reduced to reflect the chance that it will not occur....
... The injury in an enhanced risk claim is the anticipated harm itself. The injury in a medical monitoring claim is the cost of the medical care that will, one hopes, detect that injury. The former is inherently speculative because courts are forced to anticipate the probability of future injury. The latter is much less speculative because the issue for the jury is the less conjectural question of whether the plaintiff needs medical surveillance.
Id., 696 A.2d at 144. (quoting In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 850-51 (3d Cir.1990)). Thus, our holding today does not stray from prior decisions of this court.
In further keeping with Eagle-Picher, we hold that plaintiffs in medical monitoring cases will not be precluded by the rule against splitting causes of action from bringing claims for whatever physical injuries they suffer if and when they arise. See Rosenthal v. Scott, 150 So.2d 433, 439 (Fla.1961) (on rehearing; holding that the rule against splitting causes of action "should not be declared rigid, inflexible and inexorable when such declaration would in many, many instances, for the sake only of convenience to a putative wrongdoer, defeat the ends of justice.")
Defendants also contend that the United States Supreme Court has recently rejected a claim for medical monitoring. This is not entirely accurate. The Court merely held that medical monitoring was not provided for by the Federal Employers' Liability Act. See Metro-North Commuter Railroad Co. v. Buckley, 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997). In dicta, the Court laid out several policy reasons against creating a full blown cause of action for medical monitoring. Specifically, the Court was concerned about the potential for a flood of litigation resulting in awards for lump sum damages that would deplete funds needed to compensate those who actually suffered physical injuries.[1]See Id. The Court also acknowledged, however, that many of the courts authorizing the recovery of costs for medical monitoring have imposed limitations on the remedy that address these policy concerns. Id. at 440-41, 117 S.Ct. 2113.
One such limitation may be the creation of a court supervised fund to administer medical monitoring payments in cases of mass exposure. See Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287, 314 (1987). We agree with the Supreme Court of New Jersey that the implementation of and supervision over a medical monitoring fund is well within a court's equitable powers. Id. Public policy actually favors this result since the potential liability of a defendant is likely to be limited by the commencement of such a fund, as early detection will lessen the damages that a plaintiff will ultimately suffer. Thus, a trial court may use its equitable powers to create and supervise a fund for medical monitoring purposes if the plaintiff proves the following elements:
(1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the *107 prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.
Barnes v. The American Tobacco Co., 161 F.3d 127, 138-39 (3d Cir.1998) (quoting Redland, 696 A.2d at 145-46).
While we recognize that the trial courts are in the best position to establish the specific guidelines for running medical monitoring funds on a case by case basis, we think that certain procedures are necessary to the court's supervision. Should the trial court find that plaintiffs have met the required threshold showing,[2] it may then be appropriate for the court to take or cause to be taken the following minimal steps:
1. Appoint a plan administrator.
2. With the administrator's advice, approve an advisory panel of persons qualified and knowledgeable in the field to do the following:
a) establish a plan where only persons who consumed the medication, or in appropriate cases were exposed to the hazardous substance, may participate;[3]
b) establish the minimal area(s) of diagnostic tests or procedures to be performed (including the number as well as the duration of the procedures);
c) select a list of highly knowledgeable, skilled, competent, and neutral and detached examining physicians to perform the tests, both for the metropolitan areas as well as the regional areas throughout the state.
3. Establish a notification process generally sufficient to bring the opportunity for monitoring to the attention of persons who have used the medication.
4. Establish a time frame for those eligible to obtain the monitoring.
5. Implement procedures whereby the monitoring physicians submit their reports and findings,[4] together with the statement of their charges, directly to the plan administrator who shall promptly pay the reasonable amount of their claims. The parties shall have full access to such reports and the reports will be made public except for the names of the examinees, which shall remain confidential.
Doubtless many perplexing questions will arise in the administration of such a program. Where there is doubt or conflict about the course to take, the plan administrator or the parties may apply to the court by written motion and notice. In the exercise of its discretion, the court of equity, which enjoys great flexibility, should resolve such contentions by written order. Orders of the trial court shall be reviewable in this court by motion to enforce the mandate.
If the plaintiffs establish the right to relief, the defendants shall be ordered to fund the plan by depositing with the administrator, from time to time, sufficient monies to defray the entire cost of the program. The administrator shall give periodic and a final accounting. The goal of the trial judge should be to insist that monitoring proceed as efficiently and expeditiously as feasible so that the entire program can be brought to early closure. The trial judge must act in a businesslike manner, as concerns of time and money are the essence of this program because private industry should not be compelled to interminably defray the cost. The monitoring contemplated is not a social justice program.
*108 Accordingly, the trial judge in the instant case erred in granting Judgment on the Pleadings in the Defendants favor based on the argument that Florida does not recognize a claim for medical monitoring. We find nothing in Florida law barring such a claim and caselaw, equity, common sense, and the decisions of courts around the country[5] persuade us that under the limited and appropriate circumstances outlined herein, such a claim is viable and necessary to do justice.[6] Although such an undertaking may overlook some individuals, they may yet have an opportunity to present a claim if they are so advised. However, medical monitoring is not a precondition to the commencement of a cause of action where a physical injury does in fact arise. For the forgoing reasons, the order under review is reversed and remanded with directions.
NOTES
[1] Without diminishing the importance of this concern, we think it essential to point out that these fears become less relevant to our decision as more states recognize claims for medical monitoring, inasmuch as failing to recognize these types of claims in Florida will do little more than bar recovery by Florida residents or force them into a less convenient forum to obtain the same relief.
[2] After this initial proceeding has culminated, there should be no further discovery, as the monitoring system is non-adversarial.
[3] A minimal showing should be the name of the prescribing physician or the dispensing pharmacy or the equivalent. The monitoring contemplated is not a reason for curious persons to receive free medical examinations.
[4] While performing the monitoring procedures, the physicians might acquire sensitive information regarding a claimants prior medical history. We emphasize that nothing in the procedure suggested should be read as permitting a violation of the patient's privacy rights under the law.
[5] See Barnes v. The American Tobacco Co., 161 F.3d 127 (3d Cir.1998); In re Paoli Railroad Yard PCB Litigation, 916 F.2d 829 (3d Cir.1990); Friends for All Children, Inc. v. Lockheed Aircraft Corp., 746 F.2d 816 (D.C.Cir.1984); Potter v. Firestone Tire and Rubber Co., 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993); Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287 (1987); Redland Soccer Club, Inc. v. Dep't. of the Army, 548 Pa. 178, 696 A.2d 137 (1997); Hansen v. Mountain Fuel Supply Co., 858 P.2d 970 (Utah 1993); Bower v. Westinghouse Electric Corp., 522 S.E.2d 424 (W.Va.1999).
[6] We make no determination as to whether the instant facts will make this case fall into that limited class of claims for which the creation of a medical monitoring fund is appropriate. That decision is for the trial judge after the presentation of evidence supporting and/or refuting the instant claim.