Susan ZEHEL–MILLER, and Rebajean Simmons, Plaintiffs,

v.

ASTRAZENACA PHARMACEUTICALS, LP, Defendant.

No. 6:03–CV–1258–ORL–22JGG.

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 25, 2004.

Bryan Frederick Aylstock, Douglass A. Kreis, Justin Graem Witkin, Neil Duane Overholtz, Aylstock, Witkin & Sasser, P.L.C., Gulf Breeze, FL, Jerrold S. Parker, Herbert Waichman, Parker & Waichman, L.L.P., Great Neck, NY, for Plaintiffs.

Edward W. Gerecke, Robert L. Ciotti, Carlton Fields, P.A., Tampa, FL, Michael W. Davis, Steven J. Ellison, David B. Barlow, Sidley Austin Brown & Wood LLP, Chicago, IL, for Defendant.

## ORDER

CONWAY, District Judge.

## I. INTRODUCTION

In this prescription drug product liability action, Plaintiffs Susan Zehel–Miller and Rebajean Simmons sue Defendant AstraZenaca Pharmaceuticals, LP, concerning the manufacture, marketing and sale of Seroquel, an atypical anti-psychotic. The matter is before the Court for consideration of Plaintiffs' Motion for Class Certification (Doc. 27), which AstraZenaca opposes. Upon considering the parties' submissions, and following a hearing on the motion, the Court determines that this case is clearly unsuited for class action treatment.

## II. ALLEGATIONS CONCERNING SEROQUEL

According to the Class Action Complaint, Seroquel "is a medication commonly prescribed to patients to aid in the treatment of depression." Doc. 1, ¶ 19, at 5. The drug "comes in 4 strengths: 25 mg, 100 mg, 150 mg, and 200 mg." *Id.*, ¶ 20, at 5. "The total daily dose for the first four days of therapy is 50 mg (Day 1), 100 mg (Day 2), 200 mg (Day 3) and 300 mg (Day 4)." *Id.* "From Day 4 onwards, the dose should be titrated to an effective dose in the range of 300–450 mg/day or less." *Id.*

"Seroquel has been associated with diabetes mellitus, and the serious complications stemming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, and hypoglycaemia." *Id.* "The risk associated with Seroquel and diabetes is nearly 3.34 times higher than older drugs used to treat schizophrenia, such as Haldol." *Id.*, ¶ 21, at 5.

## III. PLAINTIFFS' CLAIMS

At the hearing on the Motion for Class Certification, Plaintiffs' counsel stated the "crux" of his clients' claims was that AstraZenaca knew or should have known of the increased risk of diabetes, hypoglycemia and related illnesses associated with Seroquel;

that the company should have warned patients and physicians about that risk (including notifying them of the need for blood glucose monitoring); that AstraZenaca failed to provide those warnings; and that the company's failure to do so exposed the Plaintiffs and the proposed class members to the increased risk of illness. The Complaint asserts the following claims: negligence; fraud; failure to warn; strict product liability ("Failure to Warn"); strict product liability ("Pursuant to Restatement Second of Torts 402a (1965)"); breach of express warranty; breach of implied warranty; concealment, suppression, or omission of material facts; medical monitoring, injunctive and equitable relief; unjust enrichment; and deceptive and unfair trade practices (pursuant to Florida's and other states' statutes). Doc. 1 at 12–30. The Complaint's prayer for relief requests the following remedies: (1) an order declaring the case to be a proper class action, certifying a class or classes, and determining that Plaintiffs are proper class representatives; (2) "[c]reation of a court-supervised trust fund, paid for by Defendants, to finance a medical monitoring program to deliver services, including, but not limited to, testing preventative screening and surveillance for conditions resulting from, or potentially resulting from consumption of Seroquel, as well as establishment o[f] a medical research and education fund and a medical/legal registry"; (3) an order requiring refund and restitution of proceeds from the sale of Seroquel; (4) compensatory and punitive damages; (5) statutory damages "as permitted, including any applicable exemplary damages"; (6) pre- and post-judgment interest; (7) costs and expenses, including expert fees and attorneys' fees; and (8) "such other and further relief as may be just and proper." Doc. 1 at 30–31.

## IV. CLASS ACTION ALLEGATIONS

In their Complaint, Plaintiffs describe a proposed class "consisting of all persons in the United States who purchased and/or used Seroquel." Doc. 1, ¶ 34, at 8. At the class certification hearing, Plaintiffs' counsel

estimated that 6.8 million persons fit within this definition. The Complaint also seeks to include in the class "any other persons asserting the right to sue the Defendant[ ] independently or derivatively by reason of their personal relationship with persons who used Seroquel, including without limitation, spouses, parents, children, dependents, other relatives or 'significant others' ('derivative claimants')." *Id.*, ¶ 35, at 8–9.[1]

Class certification is sought pursuant to both Fed.R.Civ.P. 23(b)(2) and (b)(3). In that regard, the Complaint alleges:

41. Class certification is . . . appropriate pursuant to Fed.R.Civ.P. 23(b)(2) because Defendant[ ][has] acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Specifically, Plaintiffs seek injunctive relief in the form of court ordered medical monitoring, revised drug warnings to assist Plaintiffs and the Class Members in the detection and treatment of medical conditions which may befall consumer patients who used Seroquel, and an emergency notice to the Class regarding the dangers of Seroquel.

42. Class certification is appropriate under Fed.R.Civ.P. Rule 23(b)(3) because common issues of law and fact relative to the design, manufacture and marketing of Seroquel predominate over individual issues. A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the Class is impracticable.

43. A class action is superior to any other available method for the fair and efficient adjudication of this dispute because common questions of law and fact overwhelmingly predominate [sic] any questions that may affect only individual class members, and there would be enormous economies to the courts and the parties in litigating the common issues on a classwide instead of repetitive individual basis. A class action

---

1. The Defendants and those affiliated with them, as well as the judicial officers presiding over this case and their immediate families, are excluded from the class definition set forth in the Complaint. *See* Doc. 1, ¶ 36, at 9.

approach would serve to consolidate and create a scenario with far fewer management difficulties because it provides the benefits of unity adjudication, judicial economy, economies of scale and comprehensive supervision by a single court. Any person who has been seriously injured and wishes to pursue an individual action outside the remedy sought in this complaint will have the opportunity to opt out.

Doc. 1 at 10–11.[2]

Consistent with the Complaint, the Motion for Class Certification defines the prospective class as follows:

All persons in the United States [3] who purchased and/or ingested Seroquel including any other persons asserting the right to sue the Defendant[ ] independently or derivatively by reason of their personal relationship with persons who used Seroquel, including without limitation, spouses, parents, children, dependents, other relatives or "significant others" ("derivative claimants").

Doc. 27 at 1 (footnote added).[4] The motion requests certification under both Fed. R.Civ.P. 23(b)(2) and (b)(3).

## V. RULE 23 REQUIREMENTS

■ " 'A class action may be maintained only when it satisfies all the requirements of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b).' " *Rutstein v. Avis Rent–A–Car Systems, Inc.,* 211 F.3d 1228, 1233 (11th Cir.2000) (quoting *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997)), *cert. denied,* 532 U.S. 919, 121 S.Ct. 1354, 149 L.Ed.2d 285 (2001). The Rule 23(a) prerequisites are nu-

merosity, commonality, typicality and adequacy of representation. *See* Fed.R.Civ.P. 23(a). Class action treatment is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" Pursuant to Rule 23(b)(3), class certification is warranted when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

## VI. ANALYSIS

### A. Preliminary Matters

For the reasons set forth in AstraZenaca's legal memorandum opposing the class certification motion, it is doubtful that Plaintiffs can even satisfy the threshold typicality and adequacy of representation requirements of Fed.R.Civ.P. 23(a). *See* Doc. 44 at 14–15. However, as in *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 208 F.R.D. 625, 630 (W.D.Wash.2002), because Plaintiffs have failed to satisfy any subpart of Rule 23(b), this Court finds it unnecessary to actually address the requirements of Rule 23(a). *See also In re Rezulin Prods. Liab. Litig.,* 210 F.R.D. 61, 66 (S.D.N.Y.2002) (district court assumed, without deciding, that the requirements of Rule 23(a) were satisfied, then proceeded to determine that the case was inappropriate for class certification).

---

**2.** The Complaint also alleges: "Class certification is appropriate under [Fed.R.Civ.P.] 23(c)(4) because particular classes or issues, including the common issues identified above, would be best adjudicated on a classwide basis, even were the court to determine that issues of Class members' injuries and compensatory damages should be adjudicated individually." Doc. 1, ¶ 44, at 11–12. However, as will become evident from the discussion that follows, class treatment is inappropriate even in the absence of personal injury and damages issues.

**3.** Inexplicably, the second page of the motion states that this action is brought "on behalf of all persons or entities *in the State of Florida*[.]"

Doc. 27 at 2 (emphasis added). Perhaps the reference to Florida is a typographical error, given the clear statements in the Complaint and in the introductory section of the class certification motion that a nationwide class is intended. In any event, even if the proposed class were limited to Florida residents, class certification still would not be appropriate since common issues do not predominate, a class action would be unmanageable, and the class claims lack cohesion.

**4.** The motion seeks to exclude AstraZenaca and affiliated persons and entities from the proposed class definition. *See* Doc. 27 at 1.

Despite the fact that the Complaint plainly contains a prayer for compensatory and punitive damages, Plaintiffs' counsel announced at the motion hearing that Plaintiffs were not seeking damages for personal injuries allegedly caused by Seroquel.[5] Further, Plaintiffs' counsel stated that Plaintiffs were requesting class certification, pursuant to both Rule 23(b)(2) and (b)(3), only on their request for an injunction requiring medical monitoring and on their claim for refund of the monies class members paid to purchase Seroquel. Additionally, prior to the hearing on the motion for class certification, Plaintiffs filed a motion seeking leave to amend their Complaint to, among other things, narrow the relief sought to medical monitoring and injunctive relief and eliminate personal injury claims for damages. *See* Doc. 46 at 2. Based on these developments, the Court considers the claims other than for medical monitoring and refund, and the demands for personal injury damages, to be withdrawn.

■ If Plaintiffs had not withdrawn their personal injury damages claims, little discussion would be necessary. Class certification under Rule 23(b)(3) would be indisputably inappropriate, since individual issues would overwhelm any common questions. *See Rutstein,* 211 F.3d at 1239 ("The idea that individual injury could be settled on a class-wide basis is preposterous"); *Rezulin,* 210 F.R.D. at 66–71 (denying Rule 23(b)(3) certification where individual questions of law and fact predominated). The same would be true of Plaintiffs' request for certification under Rule 23(b)(2). A class may be certified under that provision only if injunctive and declaratory relief is the predominant remedy sought for the class. *See Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir.2001). " '[M]onetary relief predominates in (b)(2) class actions unless it is *incidental* to requested injunctive or declaratory relief.' " *Murray,* 244 F.3d at 812 (emphasis in original; quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998)). The compensatory and punitive damage claims in the Complaint herein can hardly be considered incidental to the request for the establishment of a medical monitoring class.

## B. Rule 23(b)(3) Certification

■ Notwithstanding the withdrawal of Plaintiffs' request for compensatory and punitive damages, individual issues of law and fact still overwhelm common questions concerning the medical monitoring and refund claims.

The first insurmountable obstacle to class treatment of the claim for medical monitoring is the necessity of applying "the laws of each of the fifty states to the claims of members of the putative class." *Rezulin,* 210 F.R.D. at 74. *Rezulin* explains the impossibility of class treatment in these circumstances:

> Many states never have recognized a claim for medical monitoring, a circumstance that would force this Court into the undesirable position of attempting to predict how their courts of last resort would resolve that issue. Those states that have done so have adopted widely varying criteria for recovery. There simply is no justification for embarking on so complex a path.

210 F.R.D. at 74 (footnotes omitted); *see also Dhamer v. Bristol–Myers Squibb Co.,* 183 F.R.D. 520, 533 (N.D.Ill.1998) (discussing lack of uniformity of medical monitoring among the states). The fact that medical monitoring is not treated uniformly throughout the United States creates a myriad of individual legal issues that defeat the predominance requirement of Rule 23(b)(3); it also means that certification of a Rule 23(b)(3) medical monitoring class would render this case totally unmanageable and inefficient. *See Rezulin,* 210 F.R.D. at 74.

Moreover, whether a medical monitoring claim "is recognized as an independent cause of action, or an element of damages, the state laws generally require a finding that a plain-

---

5. At the hearing, Plaintiff's counsel actually represented that the Complaint did not contain a request for compensatory damages. This statement was incorrect. *See* Doc. 1 at 30 (requesting an award of "compensatory and punitive dam-

ages in an amount to be proven at trial for the wrongful acts complained of"). In the future, counsel shall be more careful concerning the accuracy of his representations to the Court.

tiff's exposure to a toxic substance was due to defendant's negligence." *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 212 (D.Minn. 2003).[6] "[A] finding of negligence is inextricably intertwined with individual issues." *Id.* "For example, negligence claims depend on individual facts—whether there is a breach of duty or the foreseeability of harm will depend on what [the] Defendant[ ] knew or should have known at the time [Seroquel] was prescribed and whether [the] Defendant[ ] acted reasonably based on the knowledge it had at that time." *Id.* at 208. These issues, as well as individual questions concerning patient characteristics and medical history,[7] physician involvement, dosage, causation and comparative or contributory negligence, eviscerate any notion that common issues predominate in this case. *See Rezulin,* 210 F.R.D. at 66–67; *PPA,* 208 F.R.D. at 631–32 & n. 7.

■ Individual issues also abound concerning Plaintiffs' refund claim. As explained in *Rezulin,*

> In order to obtain restitution of the purchase price of Rezulin, plaintiffs and class members would be obliged, at least in many jurisdictions, to prove some kind of harm. In other words, although theories presumably could differ, they would have to establish that they were injured by detrimental reliance on a fraudulent or misleading statement, that the defendant's retention of the price they paid for the drug would be unjust, that the value of the drug given its allegedly concealed defects was less than the purchase price, or some other variation that would warrant the transfer of money from the defendants to them.

Every one of these theories would involve issues individual to the particular class member.

210 F.R.D. at 68 (footnote omitted). Moreover, "the question whether an individual class member got his or her money's worth is inherently individual" and "involves very much the same questions as would a claim for money damages for personal injury." *Id.* at 69. These observations apply with equal force to the present case.

Based on the foregoing discussion, the Court concludes that certification under Rule 23(b)(3) would be manifestly inappropriate.

## C. Rule 23(b)(2) Certification

■ "[T]he individual issues that defeat the predominance requirement of Rule 23(b)(3) also pose an obstacle to class certification in the Rule 23(b)(2) context." *Rezulin,* 210 F.R.D. at 75. Although Rule 23(b)(2) does not contain predominance and superiority requirements, a Rule 23(b)(2) class cannot be certified unless it is cohesive. *See Barnes,* 161 F.3d at 143; *Rezulin,* 210 F.R.D. at 75; *Dhamer,* 183 F.R.D. at 529. That characteristic is strikingly absent here; all of the individual issues identified in the preceding section of this order destroy any semblance of cohesion. *See Rezulin,* 210 F.R.D. at 75. Additionally, Plaintiffs' claim for refund of the purchase price paid by 6.8 million Seroquel users can hardly be considered "incidental" to the demand for injunctive and declaratory relief, particularly when coupled with a request for establishment of a court-supervised medical monitoring trust fund. For these reasons, a class cannot be certified pursuant to Rule 23(b)(2), either.[8]

---

**6.** Negligence is one of the elements of the medical monitoring cause of action recognized by Florida's Third District Court of Appeal. The complete elements are:

(1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Petito v. A.H. Robins Co., Inc.,* 750 So.2d 103, 106–107 (Fla. 3rd DCA 1999) (quoting *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 138–39 (3rd Cir.1998)), *review denied,* 780 So.2d 912 (Fla. 2001).

**7.** "[T]he potential for future injury can only be decided by looking to the individual medical histories of the class members." *Baycol,* 218 F.R.D. at 213.

**8.** As the Court stated at the motion hearing, it will not consider the untimely filed affidavit of Plaintiffs' pharmacology expert, Cheryl D. Blume, Ph.D. Plaintiffs' counsel electronically filed this affidavit at 8:31 p.m. the night before

### D. Motion to Amend Complaint

Plaintiffs have requested leave to amend for the obvious purpose of attempting to salvage their class certification request. To that end, Plaintiffs desire to, *inter alia,* narrow the relief sought to medical monitoring and injunctive relief and eliminate personal injury claims for damages. *See* Doc. 46 at 2.[9] However, as the foregoing discussion has shown, class certification is inappropriate even when Plaintiffs' claims and demands for relief are narrowed in this fashion. Accordingly, since the motion is futile insofar as it seeks to amend as to class action allegations, it will be denied in that respect. *See Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1262–63 (11th Cir.2004) (recognizing that district court may deny leave to amend complaint where amendment would be futile). The motion will be granted, however, insofar as Plaintiffs seek to drop their other claims and their request for personal injury damages. Accordingly, the Court will direct Plaintiffs to file and serve and amended complaint that omits any class action allegations, memorializes their withdrawal of all claims except those for medical monitoring and refund, and omits any request for personal injury damages.

### E. Subject Matter Jurisdiction

Given Plaintiffs' withdrawal of their requests for money damages, the Court inquired at the hearing whether Plaintiffs could satisfy the amount in controversy requirement for diversity jurisdiction if no medical monitoring class were certified.[10] Plaintiffs' counsel responded that the Court would not have subject matter jurisdiction in that event. AstraZenaca's attorney replied that the Complaint clearly alleged that each class member met the $75,000 requirement, and that the amount in controversy was satisfied given the number of claims pled and the types of damages sought.

 "[W]hether subject matter jurisdiction exists is measured as of the time the Complaint was filed." *Baggett v. First Nat. Bank of Gainesville,* 117 F.3d 1342, 1352 (11th Cir.1997).[11] Hence, notwithstanding Plaintiffs' counsel's present valuation of the named Plaintiffs' claims, the relevant issue is whether those claims were worth more than $75,000 when Plaintiffs filed their Complaint. Moreover, in determining whether Plaintiffs' claims exceeded the jurisdictional amount at the time suit was filed, this Court is bound to apply the so-called "legal certainty" test. That is, dismissal for lack of subject matter jurisdiction is not appropriate unless it appears to a legal certainty that Plaintiffs' claims were actually less than the jurisdictional amount. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir.2003).

 The Complaint expressly alleged—albeit somewhat inartfully—an amount in controversy exceeding the jurisdictional amount as to each plaintiff. *See* Doc. 1, ¶ 2, at 1. "A plaintiff satisfies the amount in

the 9:00 a.m. hearing on the class certification motion. Obviously, this did not allow sufficient time for AstraZenaca's counsel to meaningfully evaluate and respond to the affidavit. Such delay was particularly egregious given the fact that the motion hearing had been noticed two months in advance. Additionally, expert witness reports in support of class certification were initially due in mid-February 2004. *See* Docs. 26 & 29. Plaintiffs obtained a 30–day extension of that deadline. *See* Doc. 32. Despite that extension, defense counsel represented at the hearing that Plaintiffs never produced an expert report. The absence of any prior report further compounded the prejudice resulting from the submission of an expert report on the literal eve of the class certification hearing. In any event, the contents of Dr. Blume's affidavit would not alter the Court's bottom-line conclusion that class certification is inappropriate in this particular case.

9. In the motion to amend, Plaintiffs also express a desire to "add and/or substitute class representatives." Doc. 46 at 2. This proposed measure will also not salvage Plaintiffs' attempt to proceed as a class action; the circumstances that preclude certification will continue to exist even with the addition or substitution of class reps.

10. This was entirely appropriate; since federal courts possess limited jurisdiction, they "are required to inquire into their jurisdiction at the earliest possible point in the proceeding." *Kirkland v. Midland Mortg. Co.,* 243 F.3d 1277, 1279–80 (11th Cir.2001).

11. In *Baggett,* the Eleventh Circuit adopted the district court's opinion and attached it to the appellate decision. *See* 117 F.3d at 1344. The statement quoted above appears in the appended district court opinion.

controversy requirement by claiming a sufficient sum in good faith." *McKinnon Motors,* 329 F.3d at 807. There is no evidence of bad faith here. Moreover, the Complaint advanced a host of tort theories, the essential gravamen of which was that AstraZenaca wrongfully caused the Plaintiffs to suffer a significantly increased risk of contracting diabetes. The pleading sought, *inter alia,* compensatory, statutory and punitive damages; medical monitoring; and refund of drug purchases. Given these allegations, the Court cannot conclude to a legal certainty that Plaintiffs' claims were less than $75,000 when this suit was filed.[12] Accordingly, the Court continues to possess subject matter jurisdiction over this case.

## VII. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. Plaintiffs' Motion for Class Certification (Doc. 27), filed January 15, 2004, is DENIED. This action will proceed on behalf of the named Plaintiffs only.

2. Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 46), filed July 21, 2004, is DENIED IN PART AND GRANTED IN PART.

The Motion is DENIED insofar as it seeks leave to amend as to class action allegations.

The Motion is GRANTED insofar as Plaintiffs seek leave to eliminate all claims except those for medical monitoring and refund, and to drop their request for personal injury damages. Within eleven (11) days, Plaintiffs shall file and serve an amended complaint that omits any class action allegations, memorializes their withdrawal of all claims except those for medical monitoring and refund, and omits any request for personal injury damages.

---

12. In resolving this issue, the Court has considered each named Plaintiff's claims separately. While aggregation of claims is appropriate for diversity jurisdiction purposes in some circumstances, *see Kirkland,* 243 F.3d at 1280, such an approach cannot properly be applied here.