SHEPHERD, J.,
concurring.
I agree the proposed class action in this case fails to satisfy the requirements of Florida Rule of Civil Procedure 1.220. I write only to further clarify why I believe that to be true on the facts of this case.
The trial court defined the class in this case as:
All persons in the State of Florida who since December 10, 1999[,] entered into *12 a premium financing agreement with SAFEWAY PREMIUM FINANCE COMPANY and were assessed an additional charge in excess of twenty dollars ($20) during one or more 12-month periods ... [and] who had [not] had their policy cancelled due to nonpayment within the immediately preceding 12-month period.
The plaintiff, Lazaro Sosa, entered into three successive six-month premium finance agreements with Safeway Premium Finance Company — on December 2, 2002, June 3, 2003, and November 10, 2003, respectively — to facilitate the purchase by Sosa of three personal injury protection benefit policies of insurance for those periods from Safeway affiliate, United Automobile Insurance Company. None of the policies were cancelled for any reason.
Safeway does business through independent insurance agents, who are neither employees nor agents of Safeway. The agents are in no way integrated into the company. They do not have access to either the Safeway computer system or company files. Agents are free to submit a financing application or proposed agreement to any premium finance comjoany.
Premium financing is a service made available by an insurance agent to a proposed insured when he or She either lacks the means to pay the full policy premium at the time the policy is fourchased or elects not to do so. The procurement of automobile insurance by a proposed insured in such a circumstance is a dual step process. The agent takes an application for insurance and a down payment on the policy from the proposed insured and forwards them both to the insurance company. At the same time, the agent prepares a proposed financing agreement to submit to the premium finance company on a boilerplate form, approved by the Florida Office of Insurance Regulation (formerly the Florida Department of Insurance). See § 627.839, Fla. Stat. (2006). Safeway has no knowledge of the existence of a proposed agreement until it arrives in its office. For this reason, each proposed financing agreement states, “This contract shall not become effective until accepted by the finance company by payment of its draft [for the amount of the premium the insured elects to finance] to the agent, or to the insurance company.”
Importantly, no money accompanies a proposed financing agreement submitted to Safeway or is later paid to Safeway for the service. Nor does the agent receive any compensation from Safeway for submitting a proposal. The agent’s compensation comes in the form of a commission from the insurance company. Safeway’s compensation comes from the insured in the form of monthly payments of interest on the amount financed. The image penned by the dissent of “the big guy ... lifting] $20 from unsuspecting customer’s pockets” as each proposed financing agreement floats through the premium finance company’s door, see infra p. 16, is a false one.
To the contrary, during the years Safeway financed Sosa’s policies, Safeway employed a manual process to check each incoming proposed premium finance agreement by , customer name to determine whether the applicant was a former Safeway customer and, if so, whether he had been charged a twenty-dollar service charge within the preceding six-month period. If so, a second Safeway employee performed an additional records check to determine whether the insurance contract was cancelled for non-payment.[1] If the *13 twenty-dollar service charge had been improperly assessed, then the balance due under the premium finance agreement would be reduced by that amount. Safeway instituted this process on February 16, 2001, in response to a Florida Department Insurance audit, which found instances of overcharges in Safeway’s records. According to Safeway, no computerized process existed in the industry that could perform this task at the time.
Finally, it is important to note that the manual review of each proposed finance agreement received by Safeway during this period was undertaken immediately upon arrival of the proposed agreement in the Safeway mailroom. Thus, only if the manual check failed to accomplish a required reduction might there be a statutory offense of the type alleged by Sosa in this case. Accordingly, the necessary legal inquiry with respect to proposed financing agreements received by Safeway after February 16, 2001, is whether Safeway’s manual system failed to accomplish a service charge adjustment that should have been accomplished, and, if so, whether the failure was a “knowing[J” failure within the meaning of section 627.835 of the Florida Statutes.
During the three years this case has been pending below, neither Sosa nor his counsel has unearthed any evidence that the failure of Safeway to adjust his (or any other) proposed premium financing agreement resulted from some uniform action by Safeway. As indicated by the majority, there are multiple explanations for any given failure of the manual process, ranging from a change of name or address by the premium finance customer during a prior policy period, purchase of the subsequent policy in another family member’s name, the premium finance application being incorrectly completed, or human error in the review process.[2] Because scienter will be the central, if not sole, contested issue in Sosa’s case, as in all others where a required manual adjustment was not accomplished, individual proof will be required to adjudicate liability. For the post-February 16, 2001 class period, this case is no more than a gaggle of mini-trials masquerading as a class action.[3] See, e.g., Volkswagen of Am., Inc. v. Sugarman, 909 So.2d 923, 925 (Fla. 3d DCA 2005) (reversing class certification where a series of minitrials would be required to resolve factual determinations unique to each plaintiff); Chase Manhattan Mortgage Corp. v. Porcher, 898 So.2d 153, 158 (Fla. 4th DCA 2005) (reversing class certification in action for wrongful assessment of late fees where the “single individual issue will predominate, namely whether each individual borrower’s payments were received within the grace period”); ExecuTech Bus. Sys. Inc. v. Appleton Papers, Inc., 743 So.2d 19, 21 (Fla. 4th DCA 1999) (affirming denial of motion to certify class where “plaintiffs ... failed to meet their burden to come forward with a methodolo *14 gy by which they would be able to show by generalized proof that the alleged price-fixing conspiracy had impacted each class member individually”).
Of course, the proposed class in this case spans a greater time period than the period Safeway was manually reviewing each incoming premium finance agreement. The analysis to this point does not resolve the certification question for time period beginning December 10, 1999, and ending February 16, 2001. Although, in a proper case, we might remand with the direction there be a separate adjudication for this group of potential claimants, we cannot consider that alternative here because Sosa’s claim is not typical of that group of potential claimants. See Fla. R. Civ. P. 1.220(a)(8).
The “typicality” requirement of Rule 1.220(a)(8) requires consideration of the relationship of the class representative’s claims to the claims of other members of the class. Seminole County v. Tivoli Orlando Assocs., Ltd., 920 So.2d 818 (Fla. 5th DCA 2006) (citing Atlanta Cas. Co. v. Open MRI of Pinellas, Inc., 911 So.2d 135, 138 (Fla. 2d DCA 2005)) (stating that typicality “compels an examination of the relationship of the class representative’s claim to the claims of the class members”). “ ‘[Mjere presence of factual differences will not defeat typicality[.]’ ” State Farm Mut. Auto. Ins. Co. v. Kendrick, 822 So.2d 516, 517 (Fla. 3d DCA 2002) (quoting Broin v. Philip Monis, Cos., 641 So.2d 888, 892 (Fla. 3d DCA 1994)). On the other hand, merely pointing to common issues of law is insufficient to satisfy the requirement. See Terry L. Braun, P.A. v. Campbell, 827 So.2d 261, 267 (Fla. 5th DCA 2002).
In this case, Sosa is in a totally different position than the putative class members in this second group. By prosecuting his own case, Sosa will not advance the cases of any member of this subgroup. This is contrary to the raison d’etre for the class action rule. Bouchard Transp. Co. v. Updegraff, 807 So.2d 768, 771 (Fla. 2d DCA 2002) (stating that in assessing whether class action requirements are met, “ ‘[t]he trial court must determine whether the purported class representatives can prove their own individual cases and, by so doing, necessarily prove the cases for each one of the thousands of other members of the class’ ”) (quoting Humana, Inc. v. Castillo, 728 So.2d 261, 266 (Fla. 2d DCA 1999)); Kia Motors Am. Corp. v. Butler, 985 So.2d 1133, 1136 (Fla. 3d DCA 2008). Sosa’s claim is not typical of each member’s of this subgroup within the meaning of Rule 1.220(a)(3). See State Farm, 822 So.2d at 517.[4]
It is the burden of the party seeking class action status to establish the propriety of class action status. See Wyeth, Inc. v. Gottlieb, 930 So.2d 635, 638 (Fla. 3d DCA 2006); Ernie Haire Ford, Inc. v. Gilley, 903 So.2d 956, 958 (Fla. 2d DCA 2005). We have said that because of due process and other concerns, a trial court is authorized to certify a class action only *15 after conducting a rigorous analysis to determine whether all of the elements of the class action rule have been satisfied. See Kia Motors, 985 So.2d at 1136; Wyeth, 930 So.2d at 638; Ortiz v. Ford Motor Co., 909 So.2d 479, 480 (Fla. 3d DCA 2005); Baptist Hosp. of Miami, Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995). In this case, Sosa has not met his burden. The trial court abused its discretion in certifying a class.
SUAREZ, J., concurs.

. Although not expressly stated, it appears from the record that Safeway exists for the primary purpose of financing, and therefore facilitating, the sale of United Auto insurance *13 products. United Auto and Safeway share the same business location.

. Safeway's chief financial officer, Juan Ferrer, testified that the manual system inadvertently failed to recognize the need for an adjustment to Mr. Sosa's account at the time Mr. Sosa's second proposed financing agreement was received, but that the error was discovered when Mr. Sosa's third proposed financing agreement was received and before the complaint in this case was filed.

. While, as staled by the dissent at page nineteen, it is true Florida courts have aggregated claims "in cases of systematic overcharging,” none of the cases cited by dissent are pertinent here where there is no evidence of uniform or systematic conduct by Safeway, and the central — if not sole — factual issue to be resolved is unique to each adjudication of liability.

. The analysis made here could as well have been made under Florida Rule of Civil Procedure 1.220(a)(4), which requires the class proponent to demonstrate that “the representative party can fairly and adequately represent the class.” (emphasis added). Courts and commentators have recognized the existence of overlap between the federal counterparts to Florida Rules of Civil Procedure 1.220(a)(3), (4). See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("The commonality and typicality requirements of [Federal Rule of Civil Procedure] 23(a) ... tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.”); see generally 5 James Wm. Moore et al., Moore’s Federal Practice ¶ 23.20 (3d ed. 2006).