884 So.2d 341 (2004)
Wilma SMITH, individually and on behalf of all others similarly situated, Appellant,
v.
FOREMOST INSURANCE COMPANY, a foreign corporation; and American Federation Insurance Company, a Florida Corporation, Appellees.
No. 2D03-286.
District Court of Appeal of Florida, Second District.
September 10, 2004.
James E. Felman and Katherine Earle Yanes of Kynes, Markman & Felman, P.A., Tampa, for Appellant.
Steven G. Koeppel of Troy, Yeslow & Koeppel, P.A., Ft. Myers; and Marcy Levine Aldrich, Nancy A. Cooperthwaite, and Valerie B. Itkoff of Akerman Senterfitt, Miami, for Appellees.
*342 COVINGTON, Judge.
Wilma Smith appeals the trial court's order granting summary judgment in favor of American Federation Insurance Company and its Florida subsidiary, Foremost Insurance Company, and denying Smith's cross-motion for summary judgment. Because we conclude the trial court erred in ruling that Foremost's premium service charges were not subject to part XVI of the Florida Insurance Code, we reverse the summary judgment in favor of Foremost and American Federation.
Smith purchased automobile insurance from Foremost Insurance Company. Rather than paying the entire annual premium at the policy's inception, Smith elected to pay her premium through the "Flex-A-Bill" payment plan. This allowed her to pay the premium in installments for a $5 "service fee" to be included with each installment payment.
Smith, on behalf of herself and others similarly situated, alleged in her complaint that these fees violated the premium financing statutes of Florida Insurance Code parts XV and XVI, sections 627.826-.849 and 627.901-.904, Florida Statutes (1995), respectively. Smith alleged that Foremost assessed more than the statutes permitted for service charges or interest on premiums paid in installments. She sought a declaratory judgment and injunctive relief as well as statutory damages, pursuant to section 627.835, of twice the service fees paid.
Part XVI of the insurance code, which addresses premium financing by insurance companies and agents, provides, inter alia:
627.901 Premium financing by an insurance agent or agency.
(1) A general lines agent may make reasonable service charges for financing insurance premiums on policies issued or business produced by such an agent or agency.... The service charge shall not exceed $1 per installment, or a $6 total service charge per year, for any premium balance of $120 or less. For any premium balance greater than $120 but not more than $220, the service charge shall not exceed $9 per year. The maximum service charge of $1 per installment for any premium balance greater than $220 shall not exceed $12 per year. In lieu of such service charges, an insurance agent or agency may charge a rate of interest not to exceed 18 percent simple interest per year on the unpaid balance.
(2) Every such agent or agency engaging in premium financing whose service charge or rate of interest is more than as provided in subsection (1) shall be subject to part XV of this chapter. 627.902 Premium financing by an insurer or subsidiary.An insurer, a subsidiary of an insurer, or a corporation under substantially the same management or control as an authorized insurer or group of authorized insurers may finance property, casualty, surety, and marine insurance premiums on policies issued or business produced by such insurer or insurers; however, any such insurer, subsidiary, or corporation or group of insurers the service charge or rate of interest of which is substantially more than that provided in s. 627.901 shall be subject to part XV of this chapter.[1]
*343 Part XV regulates "premium finance companies," defined as persons in the business, in whole or in part, of entering into or acquiring premium finance agreements with insureds. § 627.826.
The trial court ruled, and appellees Foremost and American Federation maintain, that the fees charged to administer Smith's installment premium payments were not subject to the premium financing statutes because they did not constitute an "advancement of funds or credit." The trial court's order granting summary judgment added that even if the service fees were governed by the statutes, they did not exceed the maximum amounts allowed.
Section 627.901 of part XVI provides two options for premium financing by an insurance agent or agency: a general lines agent may charge either (1) a maximum service charge of $1 per installment or a total of $6-$12 per year depending on the amount of the premium balance or (2) "in lieu of such service charges, ... a rate of interest not to exceed 18 percent simple interest per year on the unpaid balance." Section 627.902 allows an insurer or subsidiary such as American Federation or Foremost the same two options as long as such service charge or rate of interest is not "substantially more than that provided in s. 627.901." If such charges are "substantially more" than that, the insurer or subsidiary is subject to part XV of the insurance code, which regulates insurance finance companies and requires department licensure and use of department-approved premium finance agreements. §§ 627.902, 627.826-.849.
In ruling that Foremost's charges were not subject to the premium financing statutes because Foremost did not "advance any funds or credit to Smith," the trial court's order cited Capital National Financial Corp. v. Department of Insurance, 690 So.2d 1335, 1336 (Fla. 3d DCA 1997), and Gerlach v. Allstate Insurance Co., 338 F.Supp. 642, 647-49 (S.D.Fla.1972). These cases are distinguishable. Although Gerlach dealt with an insurer that charged premium installment service fees, the issue decided in Gerlach was whether this arrangement *344 constituted a "consumer credit transaction" within the meaning of the Truth in Lending Act, 15 U.S.C. § 1640(a). See 338 F.Supp. at 646.
Gerlach argued that such transactions fell within the scope of the Truth in Lending Act, rendering Allstate, as a creditor, subject to liability to debtor Gerlach for a $100 penalty and reasonable attorney's fees for failing to disclose required information. Id. at 647. The Gerlach court dismissed the action, ruling that, considering the Act's definitions of creditor and consumer credit, Allstate's premium installment transactions were outside the scope of the Act because the insured was not contractually obligated to make premium payments. Id. at 648.
Gerlach, although distinguishable because it addressed an issue unrelated to the issues in this case, is helpful here in that the court points out the difference between the Gerlach-Allstate transaction, governed by part XVI, and a transaction between an insured and a premium financing company under a promissory note or similar agreement:
The transaction in this action is not to be confused with the premium financing transaction, where the insured becomes obligated to a broker, bank, the issuing company or other creditor to pay the premium, or an indebtedness for premiums, and is contractually obligated to make payments.... There, of course, the creditor-debtor relationship comes into existence between the insured and the party he is obligated to pay.
Id. at 647 (citation omitted). Similarly here, Smith's transactions with insurer Foremost, which fall within part XVI, section 627.902 of the Florida Insurance Code, are not to be confused with an insured's transaction with a premium financing company as defined by part XV.
Section 627.848(1)(e) of part XV sets forth the procedure to follow when a policy is cancelled due to an insured's default in paying a premium financing company:
[T]he insurer shall promptly return the unpaid balance due under the finance contract, up to the gross amount available upon the cancellation of the policy, to the premium finance company and any remaining unearned premium to the agent or the insured, or both, for the benefit of the insured or insureds.
It is evident from this language that part XV contemplates a creditor/debtor relationship between the financing company and the insured, with the financing company advancing the entire premium to the insurer on behalf of the insured, who repays the financing company.
The trial court here also cited Capital National for its holding that the term "financing" in section 627.827 of part XV of the code "as it is used in that context is the advancement of money rather than the mere collection of funds." 690 So.2d at 1336. This case is distinguishable because Foremost is not a "premium finance company," as defined by section 627.827, in the business of "advancing" premium payments for insureds via premium finance agreements. Discussing the advancement of funds may very well be appropriate when applied to transactions conducted by premium financing companies, in which there are three parties: the insurance company, to which the premiums are advanced; the premium financing company, which advances the premiums and is repaid by the customer; and the customer. When the only two parties to the transaction are the insurer and the customer, however, there is no need for the insurer to "advance" funds to itself. While this does not involve the "advancement" of funds, it is "financing" as contemplated by part XVI, which specifically addresses insurers *345 such as Foremost, to whom the insureds pay the premiums.
Insurance premiums are strictly regulated under Florida law. Dep't of Ins. v. Dade County Consumer Advocate's Office, 492 So.2d 1032, 1041-42 (Fla.1986). The only provisions of Florida law permitting an insurer to collect an additional amount from the insured when the premium is paid in installments are the premium financing statutes contained in parts XV and XVI. Foremost itself apparently considered its Flex-a-Bill plan to be "premium financing" subject to part XVI because it filed a service charge and interest rate plan with the Department of Insurance as required under section 627.904.
We conclude as a matter of law that premium financing statutes section 627.904 governed Foremost's service fees. Therefore, we reverse the trial court's ruling that they did not.
Foremost's bills sent to Smith identified its charges as "service fees" rather than "interest" and did not identify the charges as representing interest on unpaid balances. The plain language of part XVI, section 627.901, as it read at the time of the transactions in this case, limited service fees for agents or agencies to $1 per installment and $12 total per year, or alternatively they can charge interest not to exceed 18 percent simple interest. If an agent or agency charges more than those limits, it becomes subject to part XV, which governs premium finance companies, and must comply with its requirements, such as licensing, department approval, record keeping, and limitations on charges. Insurers and subsidiaries such as Foremost also become subject to part XV, pursuant to part XVI, section 627.902, if the total service charge per year or interest rate "is substantially more than that provided in s. 627.901...."
The record indicates Foremost charged Smith $5 per installment and $10, $20, and $50 total for various years on the Flex-a-Bill plan. In the years in which Foremost charged Smith $20 and $50, these amounts clearly exceeded the $12-per-year limit as service fees. We conclude that at least some of Foremost's charges also exceeded 18 percent simple interest per year.
The legislative history of chapter 2002-252, Laws of Florida, which amended section 627.901, illustrates the proper calculation and billing of interest charges when premiums are financed by insurance agents, agencies, or companies. Fla. H.R. Comm. on Ins., CS/HB 1247 (2002) Staff Analysis (February 6, 2002) (on file with comm.). Committee analysis of house bill 1247 includes a Department of Insurance chart illustrating the maximum interest charges allowed, at 18 percent simple interest, for a $1000 premium on a hypothetical six-month policy with two months down payment ($333) and equal installments at months 3, 4, 5, and 6:

 Number of Months Monthly Maximum
 Principal Payments Outstanding since prior interest Charge
 Payment Outstanding Balance payment rate Allowed
 $ 333.00
 $ 166.75 4 $ 667.00 2 1.50% $20.01
 $ 166.75 3 $ 500.25 1 1.50% $ 7.50
 $ 166.75 2 $ 333.50 1 1.50% $ 5.00
 $ 166.75 1 $ 166.75 1 1.50% $ 2.50
 $1000.00 $2334.50 $35.02

*346 Id. at 3. Applying this method to the case at hand, Foremost charged Smith more than 18 percent simple interest for at least some of the individual installment payments each year. The charges for Smith's $1058 premium on her 1995-1996 one-year policy, for example, were $5 each at the time of the down payment ($318.47) and three equal installments at months 3, 6, and 9:

 Outstanding Months Maximum
 Number of Balance since monthly Maximum
 Principal Payments before prior interest interest Actual
 Payment Outstanding payment payment rate allowed Charge
 $ 318.47 -0- $ 5.00*
 $ 246.51 3 $739.53 3 1.50% $ 7.50 $ 5.00
 $ 246.51 2 $493.02 3 1.50% $ 5.00 $ 5.00
 $ 246.51 1 $246.51 3 1.50% $ 2.50 $ 5.00*
 $1058.00 $35.02 $20.00

The total $20 charged exceeds the $12 statutory annual threshold for service fees. Foremost, however, is arguing its charges were interest. As a total, the $20 does not exceed 18 percent annual interest on the $1058 premium. However, the $5 charge at the time of the down payment, before any interest could have accrued, and the $5 charge at the last installment, when the previous outstanding balance was $246.51, each exceeds 18 percent simple annual interest.* The trial court did not address whether these amounts were "substantially more than" the maximum 18 percent provided in section 627.901 for insurance agents or agencies. We therefore reverse the trial court's ruling on summary judgment that Foremost never charged an amount that exceeded the statutory maximum.
We affirm the denial of Smith's cross-motion for summary judgment. A question of material fact remains as to whether the service charges Foremost assessed to Smith and others similarly situated were "substantially more than that provided in s[ection] 627.901," which would subject Foremost to part XV of the code, see § 627.902, and penalties for any noncompliance. Summary judgment is inappropriate at this juncture, and we remand for further proceedings consistent with this opinion. See Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932, 936 (Fla.2000); Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
Reversed in part, affirmed in part, and remanded.
NORTHCUTT and DAVIS, JJ., Concur.
NOTES
[1] The legislature amended section 627.901, effective May 13, 2002, to read in pertinent part:

(1) ... The service charge shall not exceed $3 per installment. The maximum service charge shall not exceed $36 per year. In lieu of such service charges, an insurance agent or agency, at the sole discretion of such agent or agency, may charge a rate of interest not to exceed 18 percent simple interest per year on:
(a) The unpaid balance; or
(b) The average unpaid balance as billed over the term of the policy and subject to endorsement changes. The interest authorized by this paragraph may be billed in equal installments.
The same amendment added the following to section 627.902:
Notwithstanding any other provision of law, an insurer, a subsidiary of an insurer, or a corporation under substantially the same management or control as an authorized insurer or group of authorized insurers may charge one-half of the additional charge provided in s. 627.840 [which allows a $20 maximum "additional charge" per 12-month period], and the charges provided in s. 627.841 [late fees, attorney's fees, and insufficient funds charges].
Ch.2002-252, §§ 1-2, at 1821-22, Laws of Fla. We have not considered the amended statute here, however, because we conclude it is substantive rather than procedural and therefore not retroactive. See Merrill Lynch Trust Co. v. Alzheimer's Lifeliners Ass'n, 832 So.2d 948, 952 (Fla. 2d DCA 2002). Furthermore, the statute contains no clearly expressed legislative intent that it operate retroactively. See Thayer v. State, 335 So.2d 815, 817-18 (Fla.1976). We reject Smith's argument that the amendments merely clarify the prior language. Cf. Blackshears II Aluminum, Inc. v. Dep't of Revenue, 641 So.2d 928, 929 (Fla. 5th DCA 1994) (comparing State ex rel. Szabo Food Serv., Inc. v. Dickinson, 286 So.2d 529 (Fla.1973) (holding amendment to sales and use tax law was intended to clarify rather than change statute and was thus retroactive), with Dep't of Revenue v. Zuckerman-Vernon Corp., 354 So.2d 353 (Fla.1977) (holding statutory changes not retroactively applicable where amendment changed penalties for failure to pay taxes)).