15 So.3d 8 (2009)
SAFEWAY PREMIUM FINANCE COMPANY, a Florida corporation, Appellant,
v.
Lazaro E. SOSA, in his own right and on behalf of all persons similarly situated, Appellees.
No. 3D06-2579.
District Court of Appeal of Florida, Third District.
April 8, 2009.
Rehearing and Rehearing En Banc Denied August 28, 2009.
*9 Colodny, Fass, Talenfeld, Karlinsky & Abate, and Maria Elena Abate, and Krista S. Kovalcin, Fort Lauderdale, for appellant.
Equels Law Firm and Thomas K. Equels; Alvarez Almazan and Rodriguez and Benjamin R. Alvarez, Miami, for appellees.
Before GERSTEN, C.J., and SHEPHERD and SUAREZ, JJ.
SUAREZ, J.
Safeway Premium Finance Company appeals the trial court's order certifying a class action. Lazaro E. Sosa's Motion for Certification alleges that Safeway violated section 627.840(3)(b), Florida Statutes (2002), by overcharging Sosa and other Safeway customers. We find that Sosa failed to allege sufficiently a knowing violation of the statute, and therefore his claim is not an appropriate claim for a class action. We reverse the granting of the Motion for Certification.
On November 26, 2002, Sosa entered into a six-month premium finance agreement *10 with Safeway for which he was charged an additional service charge of twenty dollars, provided for in section 627.840(3)(b), Florida Statutes (2002). Sosa renewed his six-month automobile policy two more times, and, each time, obtained a new, six-month premium finance contract with Safeway wherein with each new contract he was charged the additional service charge of twenty dollars. He claims that section 627.840(3)(b) does not allow for more than one twenty-dollar additional charge in a twelve-month period and that the two additional service charges constituted a violation by Safeway of section 627.840(3)(b). He alleges that Safeway has made the same unauthorized charges to other customers. Safeway admits the overcharge, but states that the violation was an error and denies any knowing violation.
Section 627.840(3)(b), Florida Statutes (2002) allows a premium finance company to charge a twenty-dollar additional charge once every twelve months. The twenty-dollar additional charge may be charged more than once every twelve months only if the customer's policy was cancelled due to nonpayment within the preceding twelve-month period. Section 627.840(3)(b) states:
The service charge shall be a maximum of $12 per $100 per year plus an additional charge not exceeding $20, which additional charge need not be refunded upon prepayment. Such additional charge may be charged only once in a 12-month period for any one customer unless the customer's policy has been canceled due to nonpayment within the immediately preceding 12-month period.
§ 627.840(3)(b), Fla. Stat. (2002).
Sosa claims that he and other Safeway customers are entitled to certain specific damages provided for in section 627.835 because Safeway billed them and accepted more than one twenty-dollar additional charge within a twelve-month period in violation of section 627.840(3)(b). Section 627.835 states:
Any person, premium finance company, or other legal entity who or which knowingly takes, receives, reserves, or charges a premium finance charge other than that authorized by this part shall thereby forfeit the entire premium finance charge to which such person, premium finance company, or legal entity would otherwise be entitled; and any person who has paid such unlawful finance charge may personally or by her or his legal or personal representative, by suit for recovery thereof, recover from such person, premium finance company, or legal entity twice the entire amount of the premium finance charge so paid.
§ 627.835, Fla. Stat. (2002) (emphasis added).
In order for Sosa to state an individual cause of action and one which qualifies for class certification pursuant to section 627.840(3)(b), based on damages specified in section 627.835, the premium finance company must have knowingly charged or accepted the additional twenty-dollar premium finance charge unauthorized by statute. By the very terms of section 627.835, Sosa's Motion for Class Certification is insufficient on its face and subject to dismissal for failure to allege facts demonstrating that Safeway "knowingly" billed or received the additional premium finance charge from its customers.
When one acts "knowingly," he or she acts with knowledge, consciously, willfully, and intentionally. Black's Law Dictionary 784 (5th ed. 1979). As such, Sosa must allege facts to show that Safeway billed and accepted the additional *11 twenty dollars from him and from each class member with knowledge that its actions violated Florida Statutes. This claim differs from the unfair and deceptive trade practices class action claim found in Latman v. Costa Cruise Lines, N.V., 758 So.2d 699 (Fla. 3d DCA 2000). In Latman, the alleged deceptive trade practice consisted of the cruise line collecting port taxes on each ticket purchased, passing through a portion of the charge and the cruise line keeping the excess money from each ticket. The factual circumstances were the same for every class member. In the class action against Safeway, there would be different circumstances for each individual member of the class which would serve as the bases for and as defenses to the additional premiums charged such that the class action requirement of commonality cannot be met. See Fla. R. Civ. P. 1.220(a) (requiring court to consider claims or defenses of the representative parties and whether they raise questions of law or fact common to the class). These different facts leading to the additional premiums charged include situations where an insured changed his or her name or his or her address from one six-month premium application to the next, leading Safeway to treat the applications as though they were from different individuals, or the company generated more than one bill to the same address in a twelve-month period or committed other mistakes, unintentionally, in the processing of an application. Sosa personally has not alleged any individual facts showing intentional actions by Safeway or on behalf of potential members of the class sufficient to demonstrate a cause of action for damages under sections 627.840(3)(b) and 627.835, Florida Statutes (2002), for knowingly collecting an excess finance charge sufficient to meet the commonality requirement of a class action. See Pop's Pancakes, Inc. v. NuCO2, Inc., 251 F.R.D. 677 (S.D.Fla. 2008); Stone v. CompuServe Interactive Servs., Inc., 804 So.2d 383 (Fla. 4th DCA 2001); Chateau Cmtys., Inc. v. Ludtke, 783 So.2d 1227 (Fla. 5th DCA 2001); Shoma Dev. Corp. v. Vazquez, 749 So.2d 1287 (Fla. 3d DCA 2000). In order to prove damages, individual questions pertinent to all potential class members are subject to different explanations and defenses relating to knowing violations of these statutes. Therefore, individual questions of law and fact predominate over common allegations of simple overcharge. Fla. R. Civ. P. 1.220(b); see Gibbs Props. Corp. v. Cigna Corp., 196 F.R.D. 430 (M.D.Fla.2000) (holding that fraudulent scheme to charge excessive premium required a determination of amount of damages in each individual case in order to satisfy class action element that common issues predominate over individual questions of fact and law); Egwuatu v. South Lubes, Inc., 976 So.2d 50 (Fla. 1st DCA 2008) (holding that allegation of changing unauthorized environmental fee required individualized facts supporting claims of individualized plaintiffs precluding class certification). The requirement of knowledge is a prerequisite to stating and proving a cause of action for damages under the statutes. We find that Sosa does not state a cause of action for which a class action is appropriate.
Reversed and remanded.
SHEPHERD, J., concurs.
SHEPHERD, J., concurring.
I agree the proposed class action in this case fails to satisfy the requirements of Florida Rule of Civil Procedure 1.220. I write only to further clarify why I believe that to be true on the facts of this case.
The trial court defined the class in this case as:
All persons in the State of Florida who since December 10, 1999[,] entered into *12 a premium financing agreement with SAFEWAY PREMIUM FINANCE COMPANY and were assessed an additional charge in excess of twenty dollars ($20) during one or more 12-month periods. . . [and] who had [not] had their policy cancelled due to nonpayment within the immediately preceding 12-month period.
The plaintiff, Lazaro Sosa, entered into three successive six-month premium finance agreements with Safeway Premium Finance Companyon December 2, 2002, June 3, 2003, and November 10, 2003, respectivelyto facilitate the purchase by Sosa of three personal injury protection benefit policies of insurance for those periods from Safeway affiliate, United Automobile Insurance Company. None of the policies were cancelled for any reason.
Safeway does business through independent insurance agents, who are neither employees nor agents of Safeway. The agents are in no way integrated into the company. They do not have access to either the Safeway computer system or company files. Agents are free to submit a financing application or proposed agreement to any premium finance company.
Premium financing is a service made available by an insurance agent to a proposed insured when he or she either lacks the means to pay the full policy premium at the time the policy is purchased or elects not to do so. The procurement of automobile insurance by a proposed insured in such a circumstance is a dual step process. The agent takes an application for insurance and a down payment on the policy from the proposed insured and forwards them both to the insurance company. At the same time, the agent prepares a proposed financing agreement to submit to the premium finance company on a boilerplate form, approved by the Florida Office of Insurance Regulation (formerly the Florida Department of Insurance). See § 627.839, Fla. Stat. (2006). Safeway has no knowledge of the existence of a proposed agreement until it arrives in its office. For this reason, each proposed financing agreement states, "This contract shall not become effective until accepted by the finance company by payment of its draft [for the amount of the premium the insured elects to finance] to the agent, or to the insurance company."
Importantly, no money accompanies a proposed financing agreement submitted to Safeway or is later paid to Safeway for the service. Nor does the agent receive any compensation from Safeway for submitting a proposal. The agent's compensation comes in the form of a commission from the insurance company. Safeway's compensation comes from the insured in the form of monthly payments of interest on the amount financed. The image penned by the dissent of "the big guy . . . lift[ing] $20 from unsuspecting customer's pockets" as each proposed financing agreement floats through the premium finance company's door, see infra p. 16, is a false one.
To the contrary, during the years Safeway financed Sosa's policies, Safeway employed a manual process to check each incoming proposed premium finance agreement by customer name to determine whether the applicant was a former Safeway customer and, if so, whether he had been charged a twenty-dollar service charge within the preceding six-month period. If so, a second Safeway employee performed an additional records check to determine whether the insurance contract was cancelled for non-payment.[1] If the *13 twenty-dollar service charge had been improperly assessed, then the balance due under the premium finance agreement would be reduced by that amount. Safeway instituted this process on February 16, 2001, in response to a Florida Department Insurance audit, which found instances of overcharges in Safeway's records. According to Safeway, no computerized process existed in the industry that could perform this task at the time.
Finally, it is important to note that the manual review of each proposed finance agreement received by Safeway during this period was undertaken immediately upon arrival of the proposed agreement in the Safeway mailroom. Thus, only if the manual check failed to accomplish a required reduction might there be a statutory offense of the type alleged by Sosa in this case. Accordingly, the necessary legal inquiry with respect to proposed financing agreements received by Safeway after February 16, 2001, is whether Safeway's manual system failed to accomplish a service charge adjustment that should have been accomplished, and, if so, whether the failure was a "knowing[]" failure within the meaning of section 627.835 of the Florida Statutes.
During the three years this case has been pending below, neither Sosa nor his counsel has unearthed any evidence that the failure of Safeway to adjust his (or any other) proposed premium financing agreement resulted from some uniform action by Safeway. As indicated by the majority, there are multiple explanations for any given failure of the manual process, ranging from a change of name or address by the premium finance customer during a prior policy period, purchase of the subsequent policy in another family member's name, the premium finance application being incorrectly completed, or human error in the review process.[2] Because scienter will be the central, if not sole, contested issue in Sosa's case, as in all others where a required manual adjustment was not accomplished, individual proof will be required to adjudicate liability. For the post-February 16, 2001 class period, this case is no more than a gaggle of mini-trials masquerading as a class action.[3]See, e.g., Volkswagen of Am., Inc. v. Sugarman, 909 So.2d 923, 925 (Fla. 3d DCA 2005) (reversing class certification where a series of minitrials would be required to resolve factual determinations unique to each plaintiff); Chase Manhattan Mortgage Corp. v. Porcher, 898 So.2d 153, 158 (Fla. 4th DCA 2005) (reversing class certification in action for wrongful assessment of late fees where the "single individual issue will predominate, namely whether each individual borrower's payments were received within the grace period"); Execu-Tech Bus. Sys. Inc. v. Appleton Papers, Inc., 743 So.2d 19, 21 (Fla. 4th DCA 1999) (affirming denial of motion to certify class where "plaintiffs . . . failed to meet their burden to come forward with a methodology *14 by which they would be able to show by generalized proof that the alleged price-fixing conspiracy had impacted each class member individually").
Of course, the proposed class in this case spans a greater time period than the period Safeway was manually reviewing each incoming premium finance agreement. The analysis to this point does not resolve the certification question for time period beginning December 10, 1999, and ending February 16, 2001. Although, in a proper case, we might remand with the direction there be a separate adjudication for this group of potential claimants, we cannot consider that alternative here because Sosa's claim is not typical of that group of potential claimants. See Fla. R. Civ. P. 1.220(a)(3).
The "typicality" requirement of Rule 1.220(a)(3) requires consideration of the relationship of the class representative's claims to the claims of other members of the class. Seminole County v. Tivoli Orlando Assocs., Ltd., 920 So.2d 818 (Fla. 5th DCA 2006) (citing Atlanta Cas. Co. v. Open MRI of Pinellas, Inc., 911 So.2d 135, 138 (Fla. 2d DCA 2005)) (stating that typicality "compels an examination of the relationship of the class representative's claim to the claims of the class members"). "`[M]ere presence of factual differences will not defeat typicality[.]'" State Farm Mut. Auto. Ins. Co. v. Kendrick, 822 So.2d 516, 517 (Fla. 3d DCA 2002) (quoting Broin v. Philip Morris, Cos., 641 So.2d 888, 892 (Fla. 3d DCA 1994)). On the other hand, merely pointing to common issues of law is insufficient to satisfy the requirement. See Terry L. Braun, P.A. v. Campbell, 827 So.2d 261, 267 (Fla. 5th DCA 2002).
In this case, Sosa is in a totally different position than the putative class members in this second group. By prosecuting his own case, Sosa will not advance the cases of any member of this subgroup. This is contrary to the raison d'etre for the class action rule. Bouchard Transp. Co. v. Updegraff, 807 So.2d 768, 771 (Fla. 2d DCA 2002) (stating that in assessing whether class action requirements are met, "`[t]he trial court must determine whether the purported class representatives can prove their own individual cases and, by so doing, necessarily prove the cases for each one of the thousands of other members of the class'") (quoting Humana, Inc. v. Castillo, 728 So.2d 261, 266 (Fla. 2d DCA 1999)); Kia Motors Am. Corp. v. Butler, 985 So.2d 1133, 1136 (Fla. 3d DCA 2008). Sosa's claim is not typical of each member's of this subgroup within the meaning of Rule 1.220(a)(3). See State Farm, 822 So.2d at 517.[4]
It is the burden of the party seeking class action status to establish the propriety of class action status. See Wyeth, Inc. v. Gottlieb, 930 So.2d 635, 638 (Fla. 3d DCA 2006); Ernie Haire Ford, Inc. v. Gilley, 903 So.2d 956, 958 (Fla. 2d DCA 2005). We have said that because of due process and other concerns, a trial court is authorized to certify a class action only *15 after conducting a rigorous analysis to determine whether all of the elements of the class action rule have been satisfied. See Kia Motors, 985 So.2d at 1136; Wyeth, 930 So.2d at 638; Ortiz v. Ford Motor Co., 909 So.2d 479, 480 (Fla. 3d DCA 2005); Baptist Hosp. of Miami, Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995). In this case, Sosa has not met his burden. The trial court abused its discretion in certifying a class.
SUAREZ, J., concurs.
GERSTEN, C.J. (dissenting).
I respectfully dissent. Because the trial court did not abuse its discretion in certifying this class action, I would affirm.
Lazaro E. Sosa ("Sosa") financed the premium for his automobile insurance policy with Safeway Premium Finance Company ("Safeway"). The policy was for a six-month term. Safeway charged Sosa an additional service charge of $20 when he financed the six-month premium. When Sosa renewed his policy for another six-month term, Safeway again assessed him the $20 additional service charge.
Section 627.840(3)(b), Florida Statutes (2002), allows a premium finance company to charge a maximum of $20 per year as an additional service charge. A premium finance company that knowingly charges more than the statutorily permitted amount is liable for damages pursuant to section 627.835, Florida Statutes (2002). Sosa sues Safeway alleging a statutory violation and seeks class certification.
In determining whether to certify the class, the trial court considered evidence from Safeway's representative, Mr. Ferrer. Mr. Ferrer described Safeway's procedure for processing its premium finance agreement and application forms ("the PFA & A"). Independent insurance agents prepare the PFA & A for the proposed insured, and then they submit the forms to Safeway. Apparently, the $20 service charge is automatically included in the amount the proposed insured is charged at this point.
Upon receipt of the PFA & A, Safeway employees check to see if the insured was charged the $20 previously. If the $20 was charged previously and the insured's prior policy was not cancelled for non-payment, then the insured's account is credited with the $20 overcharge. Mr. Ferrer acknowledged that, through human error, some of these overcharges may not have been spotted and credited.
Class action certification requires that: (1) the members of the class be so numerous that a separate joinder of each member is impracticable (numerosity); (2) the claim of the representative party raises questions of law or fact which are common to questions of law or fact raised by the claim of each member of the class (commonality); (3) the claim of the representative party is typical of the claim of each member of the class (typicality); and (4) the representative party can fairly and adequately represent the interests of each member of the class (adequacy). Fla. R. Civ. P. 1.220(a); Wyeth, Inc. v. Gottlieb, 930 So.2d 635, 639 (Fla. 3d DCA 2006).
In addition, the lawsuit must fall within one of the provisions of rule 1.220(b): (1) the action creates a risk of inconsistent adjudication or adjudication affecting non-members of the class; (2) the action seeks injunctive or declaratory relief which appropriately concerns the class as a whole; or (3) the action presents common questions which predominate over any questions affecting only individual members and class representation is superior to other available methods of adjudication. Fla. R. Civ. P. 1.220(b).
Here, the trial court determined numerosity was satisfied because the class is so *16 numerous that joinder of all members is impracticable. The class included all persons in Florida who financed insurance premiums with Safeway and were charged an amount in excess of the $20 per year since December 10, 1999. Given the geographical and chronological span of the class, numerosity was clearly established.
Turning to commonality, the trial court concluded that the whole class shared this liability question: Whether the Defendant knowingly violated 627.840, Florida Statutes, by assessing and accepting for payment from Plaintiff and the Class members an additional charge in excess of twenty dollars ($20) in a 12-month period. Thus, this question satisfied the commonality requirement.
Next, the trial court determined that Sosas claim was typical of the claim of the other class members. Sosas interests are the same as those of the other class members. Additionally, the same conduct and legal theory prompted his claim and the claims of the other class members. Thus, typicality was satisfied.
The trial court also found Sosa was an adequate class representative. The trial court concluded that Sosa was willing and able to take an active role in the litigation and to protect the absent class members. Further, the trial court determined that Sosas legal team had vast class action experience and would competently represent the class. Therefore, the adequacy requirement was satisfied.
Finally, the trial court decided that Sosa satisfied the requirements of rule 1.220(b)(3). The trial court found that common questions of law and fact predominate over any individual questions in the case. Accordingly, the trial court determined that class action litigation is superior to any other method to fairly and efficiently adjudicate this claim.
The majority concludes that the claims here do not meet the standard for class treatment because Sosa's complaint fails to "allege facts demonstrating that Safeway `knowingly' billed . . . the additional premium finance charge." Supposedly, the insufficiency arises from Safeway's allegations that any unrefunded duplicative service charges were due to human or inadvertent error. These contradictory allegations, however, create an issue of proof to be determined subsequently by the trier of fact. The trial court is not required to, nor should it, determine the merits of the case before certifying a class. Rollins, Inc. v. Butland, 951 So.2d 860, 868 (Fla. 2d DCA 2006).
At this point, Sosa has met his burden of alleging that Safeway, as a common practice, charged more than one annual $20 service charge. Safeway's representative admitted this when he described the procedure for processing the PFA & As. Safeway initially charges the duplicative service charge on each contract, and then determines if the charge should be credited or refunded.
When multiplied by several thousand applicants, Safeway's method allows Safeway to use considerable sums of money for considerable periods of time. This practice clearly violates the statute. Thus, Safeway's general intent and common practice are at issue, and there is no need for a case-by-case factual determination of each plaintiff's circumstances. The trier of fact here would be faced with a single question on liability: Did Safeway knowingly and systematically charge an improper fee?
Florida courts have found violation of a statutory duty in cases of systematic overcharging to present a common question suitable for class action consideration. See, e.g., Dep't of Revenue v. Kuhnlein, 646 So.2d 717 (Fla.1994); Johnson v. Plantation *17 Gen. Hosp. Ltd. P'ship, 641 So.2d 58 (Fla.1994); Equity Residential Props. Trust v. Yates, 910 So.2d 401 (Fla. 4th DCA 2005); Smith v. Foremost Ins. Co., 884 So.2d 341 (Fla. 2d DCA 2004); Smith v. Glen Cove Apartments Condos. Master Ass'n, 847 So.2d 1107 (Fla. 4th DCA 2003); Colonial Penn Ins. Co. v. Magnetic Imaging Sys. I, Ltd., 694 So.2d 852 (Fla. 3d DCA 1997); McFadden v. Staley, 687 So.2d 357 (Fla. 4th DCA 1997); Hall v. Humana Hosp. Daytona Beach, 686 So.2d 653 (Fla. 5th DCA 1996).
I believe it is as clear as lux diei ad paludum venit[5] that this case is ideal for class action. Rather than have an unmanageable number of plaintiffs filing individual $20 lawsuits, this class action empowers the little guy and gives him leverage to fight an otherwise insurmountable foe. If plaintiff prevails, the big guy no longer lifts $20 from unsuspecting customers' pockets, the plaintiffs are made whole, and justice can reign supreme.
Accordingly, because the trial court did not abuse its discretion in certifying the class action, I would affirm the trial court's order in all respects.
NOTES
[1] Although not expressly stated, it appears from the record that Safeway exists for the primary purpose of financing, and therefore facilitating, the sale of United Auto insurance products. United Auto and Safeway share the same business location.
[2] Safeway's chief financial officer, Juan Ferrer, testified that the manual system inadvertently failed to recognize the need for an adjustment to Mr. Sosa's account at the time Mr. Sosa's second proposed financing agreement was received, but that the error was discovered when Mr. Sosa's third proposed financing agreement was received and before the complaint in this case was filed.
[3] While, as stated by the dissent at page nineteen, it is true Florida courts have aggregated claims "in cases of systematic overcharging," none of the cases cited by dissent are pertinent here where there is no evidence of uniform or systematic conduct by Safeway, and the centralif not solefactual issue to be resolved is unique to each adjudication of liability.
[4] The analysis made here could as well have been made under Florida Rule of Civil Procedure 1.220(a)(4), which requires the class proponent to demonstrate that "the representative party can fairly and adequately represent the class." (emphasis added). Courts and commentators have recognized the existence of overlap between the federal counterparts to Florida Rules of Civil Procedure 1.220(a)(3), (4). See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("The commonality and typicality requirements of [Federal Rule of Civil Procedure] 23(a) . . . tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."); see generally 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.20 (3d ed. 2006).
[5] An approximate English translation of this Latin phrase is "daylight upon the swamp."